UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

REUBEN LEWIS,

                       Plaintiff,

v.                                        9:13-cv-01172
                                             (LEK/TWD)

STANTON, et al.,

                       Defendants.

───────────────────────────────────────────────

APPEARANCES:                                       OF COUNSEL:

REUBEN LEWIS
05-A-5584
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN              DENISE P. BUCKLEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT- RECOMMENDATION AND ORDER

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Reuben Lewis alleges excessive force was used against him in violation of his rights under the Eighth Amendment. (Dkt. No. 43.) Currently pending before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 88.)

For the reasons that follow, the Court recommends that Plaintiff's motion for summary judgment be denied.

I.      PROCEDURAL HISTORY

At all times relevant to this action, Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and confined at Auburn Correctional Facility ("Auburn"). (Dkt. No. 43 at ¶ 15.) Plaintiff filed his original complaint on September 20, 2013, against Defendant Corrections Officer Stanton ("Stanton"). (Dkt. No. 1 at ¶ 7.) On September 30, 2013, Plaintiff's *in forma pauperis* application was granted. (Dkt. No. 6.) Plaintiff filed an amended complaint on January 14, 2015, against Stanton and three unnamed John Doe Corrections Officers. (Dkt. No. 43 at ¶¶ 9-11.) Plaintiff was granted leave to file a second amended complaint within thirty days of October 21, 2015, which would, in part, name the three "Doe" Defendants but he failed to do so.[1] (Dkt. No. 77.)

Plaintiff's amended complaint, which is the operative complaint, alleges excessive force stemming from an incident on March 22, 2012. (Dkt. No. 43 at ¶¶ 15, 46.) Plaintiff alleges "physical pain and mental anxiety caused by the attack." *Id*. at ¶ 34. Stanton filed his answer on February 19, 2015. (Dkt. No. 47.)

Plaintiff has now moved for summary judgment on his excessive force claim against Stanton relating to the March 22, 2012, incident. (Dkt. No. 88.) Stanton has opposed the motion. (Dkt. No. 92.) Plaintiff has filed a reply. (Dkt. No. 96.)

---

[1] The Docket maintained by the Clerk's Office does not reflect the identification of, or service on, any of the Doe defendants during the nearly three years the action has been pending. The Court, therefore, recommends dismissal of the action against the Doe Defendants without prejudice. *See Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998) (dismissing the unidentified "John Doe" and "Jane Doe" defendants after plaintiff had been provided "over two years to identify and serve these individuals, including the full discovery period.").

## II. FACTUAL BACKGROUND

The following facts are set forth as alleged in Plaintiff's amended verified complaint.[2] On March 22, 2012, Plaintiff was assaulted by Stanton. (Dkt. No. 43.) At approximately 12:00 p.m., Plaintiff was walking back from the mess hall at Auburn, when Stanton began shouting. *Id*. at ¶ 15. Plaintiff did not realize that Stanton was yelling at him until other inmates pointed at Plaintiff, indicating that he was Stanton's target. *Id*. at ¶ 16. Stanton ordered Plaintiff to "get over here" and Plaintiff immediately complied. *Id*. at ¶ 17.

However, Stanton grabbed Plaintiff, slammed him into a wall, continued to yell, and pushed Plaintiff "trying to provoke and intimidate him." *Id*. at ¶¶ 18, 19. Plaintiff's hands remained on the wall as ordered. *Id*. Corrections Officer ("C.O.") John Doe #1 then grabbed Plaintiff's arm while Stanton searched Plaintiff and threw away his identification badge. *Id*. at ¶ 20. Next, Plaintiff was ordered to walk with his hands in his pockets and while doing so was slammed by Stanton into a steel cage surrounding an officer's desk. *Id*. at ¶ 21. C.O. John Doe #2 was seated at the desk at the time. *Id*. As Plaintiff was held against the cage, Stanton twisted Plaintiff's arms behind his back and tightly handcuffed him to the point that Plaintiff could not move his fingers. *Id*. at ¶ 22.

After handcuffing Plaintiff, Stanton placed him into a "sleeper/choke hold" from behind and shoved Plaintiff into a storage room for which C.O. John Doe #3 held open the door. *Id*. at ¶ 23. Stanton again threw Plaintiff into a wall and reapplied the choke hold with both hands. *Id*. at ¶ 24. By this time, Plaintiff "could not speak or breathe and felt like he was about to pass-out."

---

[2] A verified complaint, such as Plaintiff's (Dkt. No. 43), is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted).

3

*Id*. Stanton motioned like he was getting ready to punch Plaintiff with his right hand when the door to the storage room opened. *Id*. at ¶ 25. When the door opened, Stanton released his other hand from Plaintiff's neck and Plaintiff slumped against the wall gasping for air. *Id*. at ¶ 26. The next thing Plaintiff remembered, he was being escorted back to his cell by non-party Sergeant Mahunik. *Id*. at ¶ 27. Plaintiff's handcuffs were removed. *Id*. That evening, Plaintiff placed a sick call request. *Id*. at ¶ 33. Plaintiff also submitted a grievance detailing this incident. (Dkt. No. 88-4 at 27.[3])

### III. LEGAL STANDARDS FOR MOTIONS FOR SUMMARY JUDGMENT

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 273 (citations omitted). The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

---

[3] Citations to page numbers in Court documents refer to the page numbers assigned by the Court's electronic filing system.

574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit and "therefore will be considered in determining whether material issues of fact exist[.]" *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original). To defeat summary judgment, "nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id*. (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id*. (citation and internal quotation marks omitted). Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003)

(quoting *Haynes v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting rights merely because they lack a legal education. *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). The court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, this does not mean that a *pro se* litigant is excused from following the procedural formalities of summary judgment, *Govan*, 289 F. Supp. 2d at 295, and "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)[4] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). Moreover, the latitude accorded a *pro se* litigant "does not relieve him of the obligation to respond to a motion for summary judgment with sufficient admissible evidence." *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

## IV. DISCUSSION

"The Eighth Amendment prohibits the infliction of cruel and unusual punishments . . . including the unnecessary and wanton infliction of pain." *Giffen v. Crispen*, 193 F.3d 89, 91 (2d Cir. 1999) (citation and internal quotation marks omitted). An Eighth Amendment excessive force claim has two elements – "one subjective focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992)).

---

[4] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

6

"The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (quoting *Wright*, 554 F.3d at 268)) (internal quotation marks omitted). The test for wantonness on an excessive force claim "is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id*. (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (in determining whether defendants acted maliciously or wantonly, "a court must examine several factors including: the extent of the injury and mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.") (citation and internal quotation marks omitted).

The objective component requires a showing that the "conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Harris*, 818 F.3d at 64 (citation omitted). The Supreme Court has emphasized that after *Hudson*, the "core judicial inquiry" shifted "from the extent of the injury to the nature of the force – specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (quoting *Hudson*, 503 U.S. at 7).

In this case, Plaintiff's and Stanton's accounts of March 22, 2012, vary widely. According to Plaintiff, Stanton grabbed, slammed, yelled at, pushed, shoved, and rammed Plaintiff into a metal cage, twisted his arms, handcuffed him to the point he could not move his fingers, and choked him. (Dkt. No. 43 at ¶¶ 18-24.) Plaintiff also asserts that he did not "provoke, resist, or retaliate . . . in any way." *Id*. at ¶ 40. This stands in direct contrast to

Stanton's account of the incident. In his response to Plaintiff's June 12, 2015, request for admissions, Stanton wholly denied participation in the use of force incident involving Plaintiff. (Dkt. No. 88-4 at 19.) In his opposition to Plaintiff's motion for summary judgment, Stanton states that Plaintiff was returning from the mess hall when he violated movement procedures by stopping to talk with another inmate. (Dkt. No. 92 at 3.) Stanton ordered Plaintiff to keep walking, counseled Plaintiff about his actions, and then performed a pat frisk on Plaintiff. *Id*. According to Stanton's response to Plaintiff's request for admissions, Plaintiff refused to comply with Stanton's orders to keep moving and stop talking, contrary to Plaintiff's assertions that he was entirely cooperative. (Dkt. No. 88-4 at 19.) Although Stanton denied physically searching or touching Plaintiff in his response to Plaintiff's June 12, 2015, request for admissions, Stanton acknowledges he performed a pat frisk on Plaintiff on March 22, 2012. (Dkt. No. 92 at 3; Dkt. No. 88-4 at 19.) Stanton's opposition also identifies Sergeant Mahunik as being present during the pat frisk which was performed without incident. (Dkt. No. 92 at 3.) Plaintiff was then escorted back to his cell because he was not in compliance with movement procedures. (Dkt. No. 88-4 at 12.)

Plaintiff's amended complaint asserts that he requested medical treatment the night of the incident for injuries related to Stanton's alleged excessive force. (Dkt. No. 43 at ¶ 33.) Attached to his motion, Plaintiff included an ambulatory health progress note from March 23, 2012, which shows Plaintiff complained of seasonal allergies, a stiff neck with pain on the left side, and minor abrasions on both wrists. (Dkt. No. 88-4 at 88.) Stanton correctly points out in his opposition that the health record makes no mention of an assault on Plaintiff that would have led to his complaints. (Dkt. No. 92 at 4.) Thus, Stanton argues Plaintiff suffered no injury as a result of Stanton's pat frisk performed on March 22, 2012. *Id*. at 5.

8

To support his claim of excessive force, Plaintiff relied on his March 27, 2012, grievance titled "Choked, Threatened, and Frisked" in which he states he was "arbitrarily [choked;] threatened; pushed and shoved to the wall; frisked and handcuffed and escorted to his cell." (Dkt. No. 88-4 at 27.) His grievance did not name Stanton. *Id*. The superintendent's decision found that, after a full investigation, there was insufficient evidence to support the grievance and that the involved officer denied the allegations. *Id*. at 26. Although Plaintiff claimed in his appeal of the superintendent's decision that there were multiple witnesses to the incident, Plaintiff did not name any witnesses in his complaint or identify witnesses to the investigating officer. *Id*. at 23, 25. The Central Office Review Committee ("CORC") upheld the superintendent's decision, finding that "Officer S . . . denied threatening or physically assaulting the grievant during the pat frisk on 3/22/12." *Id*. at 23. In further support of his argument that no incident of excessive force took place, Stanton relies upon the CORC decision which also indicated a non-party sergeant witnessed the pat frisk and stated it was performed without incident. *Id*.

On a summary judgment motion, a court may not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). "The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury." *Id*. at 856; *see also Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) (on a summary judgment motion "the court should not weigh evidence or assess the credibility of witnesses . . . . These determinations are within the sole province of the jury.").

Here, there are conflicting versions of exactly what occurred on March 22, 2012. Plaintiff claims Stanton grabbed him, slammed him into a wall, and pushed, tightly handcuffed, and choked Plaintiff until he was gasping for air. (Dkt. No. 43 at ¶¶ 18-24.) In contrast, Stanton claims Plaintiff violated movement procedures and that he performed a pat frisk on Plaintiff without incident after Plaintiff failed to comply with his orders to keep moving. (Dkt. No. 88-4 at 19; Dkt. No. 92 at 3.) Because weighing the conflicting evidence in the summary judgment record and assessing the credibility of the parties is within the sole province of the jury, the Court recommends that Plaintiff's motion for summary judgment against Stanton be denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 88) be **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Report-Recommendation and Order, along with copy of *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: November 3, 2016
Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

ORDERED that the Clerk of the Court shall enter judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

[FRANCIS](), Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven Correctional Facility, brings this action pursuant to [42 U.S.C. § 1983](). Mr. Cole alleges that the defendant Richard Pflueger, a corrections officer, violated his First Amendment rights by refusing to allow him to attend religious services. The defendant now moves for summary judgment pursuant to [Rule 56 of the Federal Rules of Civil Procedure](). For the reasons set forth below, I recommend that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an inmate in the custody the New York State Department of Correctional Services ("DOCS"), incarcerated at the Green Haven Correctional Facility. (First Amended Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to July 15, 1993, the plaintiff was in keeplock because of an altercation with prison guards. (Am.Compl.¶¶ 17–25). An inmate in keeplock is confined to his cell for twenty-three hours a day with one hour for recreation. (Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶ 5). Pursuant to DOCS policy, inmates in keeplock must apply for written permission to attend regularly scheduled religious services. (Reply Affidavit of George Schneider in Further Support of Defendants' Motion for Summary Judgment dated September 9, 1996 ("Schneider Aff.") ¶ 3). Permission is granted unless prison officials determine that the inmate's presence at the service would create a threat to the safety of employees or other inmates. (Schneider Aff. ¶ 3). The standard procedure at Green Haven is for the captain's office to review all requests by inmates in keeplock to attend religious services. (Schneider Aff. ¶ 3). Written approval is provided to the inmate if authorization is granted. (Affidavit of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The inmate must then present the appropriate form to the gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

\*2 On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"),

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green Haven Correctional Facility, R. Pflueger, A. Glemmon, Sgt. Stevens, Lt. Haubert, Capt. W.M. Watford, Capt. T. Healey, and John Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone, New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the Attorney General of the State of New York, New York, New York, for Defendant.

*MEMORANDUM & ORDER*

[PAULEY](), J.

\*1 The remaining defendant in this action, Correction Officer Richard Pflueger, having moved for an order, pursuant to [Fed.R.Civ.P. 56](), granting him summary judgment and dismissing the amended complaint, and United States Magistrate Judge James C. Francis IV having issued a report and recommendation, dated August 20, 1999, recommending that the motion be granted, and upon review of that report and recommendation together with plaintiff's letter to this Court, dated August 28, 1999, stating that plaintiff does "not contest the dismissal of this action", it is

ORDERED that the attached report and recommendation of United States Magistrate Judge James C. Francis IV, dated August 20, 1999, is adopted in its entirety; and it is further

ORDERED that defendant Pflueger's motion for summary judgment is granted, and the amended complaint is dismissed; and it is further

attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*
Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

*3 Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July 22,

1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'* s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

*Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

Footnotes

1  In light of this finding, there is no need to consider the defendant's qualified immunity argument.

**End of Document**  © 2016 Thomson Reuters. No claim to original U.S. Government Works.